**Edmund M. JASKIEWICZ, Appellant,**

v.

**Gerald J. MOSSINGHOFF,
Commissioner, Patents &
Trademarks.**

**No. 86–5073.**

United States Court of Appeals,
District of Columbia Circuit.

Oct. 7, 1986.

Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Robert E.L. Eaton, Jr., Asst. U.S. Attys. and Harris A. Pitlick, Assoc. Sol., Commission of Patents and Trademarks, Washington, D.C., were on appellee's motion to transfer.

Joseph G. Dail, Jr., McLean, Va., was on appellant's opposition to the motion.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The appellant, Edmund M. Jaskiewicz, seeks to raise an appeal from a judgment of the District Court denying his petition for review of an order suspending him from practice before the Patent and Trademark Office (PTO). By Decision and Order dated October 1, 1984, Jaskiewicz was suspended, pursuant to 35 U.S.C. § 32 (1982),[1] for misconduct in the representation of parties before the PTO. Jaskiewicz then initiated a law suit in District Court to overturn the disciplinary action taken against him by the PTO.

---

1. 35 U.S.C. § 32 reads as follows:

The Commissioner may, after notice and opportunity for a hearing, suspend or exclude, either generally or in any particular case, from further practice before the Patent and Trademark Office, any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 31 of this title, or who shall, by word, circular, letter, or advertising, with intent to defraud in any manner, deceive, mislead, or threaten any applicant or prospective applicant, or other person having immediate or prospective business before the Office. The reasons for any such suspension or exclusion shall be duly recorded. The United States District Court for the District of Columbia, under such conditions and upon such proceedings as it by its rules determines, may review the action of the Commissioner upon the petition of the person so refused recognition or so suspended or excluded.

The District Court rejected Jaskiewicz's claims by summary judgment entered on December 5, 1985, and Jaskiewicz noted an appeal to this court on January 30, 1986. In response, the appellee, Gerald J. Mossinghoff, the Commissioner of the PTO, filed a motion with this court claiming that proper jurisdiction for this appeal lies with the United States Court of Appeals for the Federal Circuit and praying that the appeal be transferred to that court pursuant to 28 U.S.C. § 1631 (1982). For the reasons stated below, we grant the motion.

## I. BACKGROUND

Jaskiewicz was admitted to practice before the PTO (formerly the "Patent Office") in 1955. By notice dated May 19, 1983, the Solicitor of the PTO instituted disciplinary proceedings under 35 U.S.C. § 32 for suspension or disbarment of Jaskiewicz, charging him with three counts of misconduct in the representation of parties before the PTO. The notice alleged violations of 35 U.S.C. § 111 (1982), 37 C.F.R. § 1.56 (1985), 37 C.F.R. § 1.57 (1982), 37 C.F.R. § 1.344 (1983), and Canon 1 and DR 1–102(A)(4) of the Code of Professional Responsibility (37 C.F.R. §§ 10.21 & 10.-23(b)(4) (1985)).

In his answer to the PTO, Jaskiewicz admitted some of the factual allegations and denied others. He also asserted that the Commissioner had exceeded his statutory authority and violated the procedures required by law. However, Jaskiewicz's principal defense was that the cited regulations were vague and subject to different interpretations and, therefore, it was arbitrary and capricious for the PTO to discipline him when he acted in a manner consistent with what he reasonably believed were permissible interpretations of the agency's regulations.

After a hearing, an Administrative Law Judge ("ALJ") issued a decision recommending that Jaskiewicz be disbarred. Subsequently, on October 1, 1984, following consideration of Jaskiewicz's exceptions to the ALJ's recommended decision, the Deputy Commissioner of the PTO issued a Decision and Order suspending Jaskiewicz from practice before the PTO for seven years. Jaskiewicz was actually to be barred from practice for the first two years of the suspension, with the last five years to be served on probation.

Jaskiewicz commenced this action in the District Court by filing a Petition for Review pursuant to 35 U.S.C. § 32. In an Order filed December 5, 1985, the District Court entered summary judgment for the Commissioner. Jaskiewicz noted his appeal to this court on January 30, 1986. On June 27, 1986, the Commissioner filed the pending Motion to Transfer.

## II. ANALYSIS

"It is well settled that ... jurisdiction of a Circuit Court of the United States is limited in the sense that it has no other jurisdiction than that conferred by the Constitution and the laws of the United States." *Hanford v. Davies*, 163 U.S. 273, 279, 16 S.Ct. 1051, 1053, 41 L.Ed. 157 (1896). In the instant case, the Commissioner asserts that the appellant's suit is a "civil action arising under [an] Act of Congress relating to patents" pursuant to 28 U.S.C. § 1338(a) (1982). Because, under 28 U.S.C. § 1295(a)(1) (1982 & Supp. III 1985), the United States Court of Appeals for the Federal Circuit is granted exclusive jurisdiction over "an appeal from a final decision of a district court ... if the jurisdiction of that court was based, in whole or in part, on section 1338 [of title 28,]" the Commissioner contends that this court lacks jurisdiction to entertain this appeal. The question of proper appellate jurisdiction of an action challenging a suspension or disbarment from practice before the PTO under 35 U.S.C. § 32, and whether such an action is one "arising under [an] Act of Congress relating to patents" under 28 U.S.C. § 1338(a), is one of first impression. It is to this question that we now turn.

### A.

The district courts have original jurisdiction over "any civil action arising under

any Act of Congress relating to patents...." 28 U.S.C. § 1338(a) (1982). Prior to October 1, 1982, jurisdiction over appeals relating to patents would lie in the court of appeals in the circuit in which the suit was initiated. However, the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, granted *exclusive* jurisdiction over appeals in cases arising in whole or in part under federal laws relating to patents to the newly created United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(1) (1982 & Supp. III 1985).

The appellant asserts, and the Commissioner concedes, that Jaskiewicz's principal cause of action rests on 35 U.S.C. § 32, under the portion of the federal patent law covering the Patent and Trademark Office. Section 32 specifically authorizes the Commissioner to suspend or exclude attorneys from further practice before the PTO; the section also states that anyone so disciplined may seek judicial review in the United States District Court for the District of Columbia. However, the obvious applicability of section 32 in no way resolves the question whether appellant's suit arises "under any Act of Congress relating to patents." 28 U.S.C. § 1338(a) (1982). The critical question here is whether the federal legislation establishing the PTO, and setting forth its authority to discipline those who practice before the agency, is an "Act of Congress relating to patents."

### B.

In order to invoke jurisdiction under 28 U.S.C. § 1338, the Federal Circuit has held that a "plaintiff must have asserted some right or interest under the patent laws, or at least some right or privilege that would be defeated by one or sustained by an opposite construction of those laws." *Beghin-Say Int'l, Inc. v. Rasmussen*, 733 F.2d 1568, 1570 (Fed.Cir.1984); *see also Dubost v. United States Patent & Trademark Office*, 777 F.2d 1561, 1564 (Fed.Cir. 1985). It appears that the Federal Circuit has given a broad construction to the "relating to patents" language in section 1338,

at least in part because "one of the primary objectives of [the Circuit's] enabling legislation is to bring about uniformity in the area of patent law.... [The Federal Circuit], thus, has a mandate to achieve uniformity in patent matters." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574 (Fed.Cir.1984). We wholeheartedly agree with our sister circuit's assessment of congressional intention regarding the applicability of section 1338.

On the facts of this case, and in light of the precedent from the Federal Circuit construing section 1338, we conclude that it cannot be doubted that Jaskiewicz's action is one "arising under [an] Act of Congress relating to patents." We can hardly imagine the Federal Circuit seeking "to achieve uniformity in patent matters" without exclusive jurisdiction over appeals relating to who may practice before the Patent and Trademark Office.

### C.

In his petition for review to the District Court, Jaskiewicz asserted a "right or interest under the patent laws" in retaining his license as a practicing attorney before the PTO. "The privilege of practicing law 'is not "a matter of grace and favor"'; on the contrary, as quite recently recorded, 'we have always viewed an attorney's license to practice as a "right" which cannot lightly or capriciously be taken from him.'" *Charlton v. FTC*, 543 F.2d 903, 906 (D.C. Cir.1976) (quoting *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 1179, 10 L.Ed.2d 224 (1963) and *Kivitz v. SEC*, 475 F.2d 956, 962 (D.C. Cir.1973)). It is likewise clear that the right and interest asserted by Jaskiewicz rest on an interpretation of the applicable laws and regulations governing practice before the PTO. We believe that these laws and regulations are paradigmatic examples of laws "relating to patents."

Because of the highly specialized nature of patent law, otherwise licensed attorneys are not automatically or routinely licensed to practice before the PTO. The Commissioner of the PTO is empowered to pre-

scribe regulations governing the recognition and conduct of persons practicing patent law. 35 U.S.C. § 31 (1982). Persons who seek to become practitioners must "show that they are of good moral character and reputation and are possessed of the necessary [legal, scientific, and technical] qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office." 35 U.S.C. § 31 (1982); 37 C.F.R. § 10.7(a) (1985). With the exception of persons who have actively served for at least four years in the patent examining corps of the PTO, "each applicant for registration must take and pass an examination...." 37 C.F.R. § 10.7(b) (1985). "The examination will not be administered as a mere academic exercise." *Id.*

The right to practice patent law is not irrevocable. The Commissioner has prescribed Canons and Disciplinary Rules that govern the practice of patent law. 37 C.F.R. §§ 10.20–10.112 (1985). The Commissioner has delegated the responsibility to investigate possible violations of the Disciplinary Rules to the Director of Enrollment and Discipline. 37 C.F.R. § 10.131 (1985). If the Director believes that a practitioner has violated a Disciplinary Rule, he must call a meeting of the Committee on Discipline. 37 C.F.R. § 10.132(a) (1985). If the Committee determines that probable cause exists to believe that a practitioner has violated a Disciplinary Rule, then disciplinary proceedings are instituted by filing a complaint under 37 C.F.R. § 10.134 (1985) alleging violation of those Disciplinary Rules. 37 C.F.R. § 10.132(b) (1985).

This maze of laws and regulations relating to practice before the PTO obviously is designed to facilitate the work of the agency in resolving the inherently complex substantive questions arising over issues of patentability under the patent laws. We find no meaningful way to distinguish between issues of "practice" and "substance" in this case, and thus view all of the issues relating to practice before the PTO as "relating to patents."

### D.

The Federal Circuit has also held that its appellate jurisdiction is not limited to scientific or technical aspects of patent law, but extends to matters that relate to the practice of patent law before the PTO. In *Dubost,* counsel for Dubost submitted all necessary documents with a patent application claiming priority based on a French application. However, counsel neglected to sign the check submitted to pay the required fee. The original submission was within the one-year time limit to gain priority for a foreign patent, but by the time the check was signed and resubmitted, the one-year time limit had expired. Dubost filed a petition seeking to establish the original submission date as the date for establishing priority for the application. The PTO denied the petition, ruling that the receipt of the signed check established priority as of that date. The Commissioner denied a petition for reconsideration, and Dubost commenced an action in District Court. The District Court found that it had jurisdiction pursuant only to 28 U.S.C. § 1361 (1982), the mandamus statute, and that Dubost had failed to demonstrate that a clear duty owed to him was either unfulfilled or performed in an arbitrary or capricious manner.

In reviewing Dubost's claim, the Federal Circuit found that the district court had jurisdiction at least in part under 28 U.S.C. § 1338:

> [I]t is not controlling that Dubost's claim does not appear to be created by the patent laws in the same sense as the bulk of § 1338(a) cases.

> Dubost's complaint made to the district court clearly stated a right or interest that would be defeated or sustained by the construction given to the patent laws. If, as Dubost alleged, an unsigned check satisfies the requirement contained in [35 U.S.C.] § 111 that the application be "accompanied by the fee required by law," he will gain the benefit of his foreign priority date. If the unsigned check were held not to satisfy the § 111 re-

quirement, he will not be entitled to claim priority. Thus, the district court's resolution of this case necessarily entailed a construction of the fee requirement of § 111. Further, the construction of the statute directly affects Dubost's entitlement to priority under [35 U.S.C.] § 119. Assuming the existence of an intervening reference, loss of priority could have an adverse impact upon Dubost in a variety of ways, from requiring a narrowing of his claims to divesting him of the entirety of his prospective substantive patent rights.

We conclude that the district court had jurisdiction over the subject case under, *inter alia*, 28 U.S.C. § 1338(a).

777 F.2d at 1565.

In the instant case, Jaskiewicz is alleged to have violated 35 U.S.C. § 111, the precise provision at issue in *Dubost*. In *Dubost*, the PTO arguably could have brought proceedings against Dubost's attorney under 35 U.S.C. § 32 for violating section 111 by failing to sign the check. Any adverse action against Dubost's attorney could then have been reviewed by the District Court. If the section 32 claim was seen as one not arising under an act relating to patents, an appeal could be taken in this court from the judgment of the District Court, even though the Federal Circuit had exclusive jurisdiction to determine the substantive effect of the same action (failure to sign the check) giving rise to the proceeding

under section 111 in *Dubost*. Such a result would make little sense. If the original action in *Dubost* arises under a law relating to patents, any related action under section 32 should be viewed in the same light, because the later action hinges significantly upon the legitimacy of the PTO's view of the substantive requirements of section 111. Any other result would defeat the goal of uniformity in the application of the patent laws. If we were to find that the Federal Circuit does not have exclusive jurisdiction of section 32 cases, the reach of *Dubost* would be significantly diminished.[2]

The right to practice patent law arises under 35 U.S.C. § 31 (1982). Although, as noted in *Dubost*, this right is "not created by the patent laws in the same sense as the bulk of § 1338(a) cases," it surely may "be defeated or sustained by the construction given the patent laws." 777 F.2d at 1565. Therefore, to maintain the uniformity mandated by Congress in the area of patent law, the Federal Circuit must retain exclusive jurisdiction over the instant appeal.[3]

### III. CONCLUSION

An action for review of a decision of the Commissioner of the Patent and Trademark Office disciplining an attorney pursuant to 35 U.S.C. § 32 arises under an Act of Congress relating to patents. Therefore, jurisdiction in the District Court is based at least in part on 28 U.S.C. § 1338, and appellate review of that court's deci-

---

**2.** An even worse scenario is a section 32 case, based on Dubost's attorney's action, preceding *Dubost*. If appellate jurisdiction of the section 32 case was not solely in the Federal Circuit, there would be a substantial risk of having this circuit deciding a patent question arising under 35 U.S.C. § 111, with possible preclusive effect on the issue in *Dubost*.

**3.** Both parties rely on *Enders v. American Patent Search Co.,* 535 F.2d 1085 (9th Cir.1976), a case decided before the issuance of the Federal Circuit decisions construing 28 U.S.C. § 1338 jurisdiction. *Enders* was a private action brought against persons alleged to be holding themselves out as recognized to practice before the patent office when in fact they were not so recognized. Enders claimed a private right of action under 35 U.S.C. § 33 (1982), a statute making it a crime falsely to hold oneself out as

registered to practice patent law. The Ninth Circuit held that a violation of 35 U.S.C. § 33 did not have a strong enough relationship to patents to provide jurisdiction under 28 U.S.C. § 1338.

Arguably, *Enders* is distinguishable both on its facts, and because it involved a private cause of action under section 33, as opposed to the review of an action of the PTO. However, it is unnecessary for us to attempt to reconcile our decision with the decision in *Enders*. On the facts before us, we have no serious doubt about the correct result. Furthermore, *Enders* is of only limited value because the decision was rendered before the creation of the Federal Circuit; the Ninth Circuit, therefore, did not have occasion to consider the congressional policy of uniformity in the area of patent law, a matter of critical importance in our judgment in this case.

sion is granted exclusively to the Federal Circuit by 28 U.S.C. § 1295(a). Accordingly, pursuant to 28 U.S.C. § 1631, this case shall be transferred to United States Court of Appeals for the Federal Circuit.